**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| GEORGE DURGIN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TECHNICAL OLYMPIC USA, INC., ANTONIO P. MON, DAVID J. KELLER, and RANDY L. KOTLER,<br><br>Defendants. | **CIVIL ACTION NO.: 06-cv-61844 (KAM)** |
| RONALD W. HENLEY, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TECHNICAL OLYMPIC USA, INC., DAVID J. KELLER, RANDY L. KOTLER, and ANTONIO P. MON,<br><br>Defendants. | **CIVIL ACTION NO.: 06-cv-61928 (UU)** |

**MEMORANDUM OF LAW IN
SUPPORT OF BRICKLAYERS & TROWEL
TRADES INTERNATIONAL PENSION FUND'S
MOTION FOR CONSOLIDATION OF RELATED CASES,
<u>APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL</u>**

| | |
|---|---|
| AGNES JUTKOWITZ, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　　vs.<br><br>TECHNICAL OLYMPIC USA, INC., ANTONIO P. MON, DAVID J. KELLER, and RANDY L. KOTLER,<br><br>　　　　　　　　　Defendants. | **CIVIL ACTION NO.: 06-cv-61938 (DLG)** |
| COY BUI, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　　vs.<br><br>TECHNICAL OLYMPIC USA, INC., ANTONIO P. MON, DAVID J. KELLER, and RANDY L. KOTLER,<br><br>　　　　　　　　　Defendants. | **CIVIL ACTION NO.: 07-cv-60009 (PCH)** |

## PRELIMINARY STATEMENT

Presently pending before the Court are four securities class action lawsuits (the "Actions") brought on behalf of all persons or entities (the "Class") who purchased the securities of Technical Olympic USA, Inc. ("Technical" or the "Company") during the period August 1, 2005 through and including November 6, 2006 (the "Class Period"). Plaintiffs allege violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, against Defendants Technical, Antonio P. Mon, David J. Keller, and Randy L. Kotler (the "Individual Defendants").

Class member Bricklayers & Trowel Trades International Pension Fund (the "Movant") hereby moves this Court, pursuant to Fed. R. Civ. P. 42(a) and Section 21D(a)(3)(B) of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for an order: (a) consolidating the captioned actions for all purposes; (b) appointing Movant as Lead Plaintiff in the Actions; and (c) approving Movant's selection of Bernstein Liebhard & Lifshitz, LLP ("Bernstein Liebhard") as lead counsel and Barker Rodems & Cook, P.A. ("Barker Rodems") as liaison counsel for the Class.

During the Class Period, Bricklayers & Trowel Trades International Pension Fund purchased 37,490 shares of Technical common stock and incurred losses of approximately $388,000. Movant believes that its losses represent the largest financial interest in the outcome of the litigation.

## STATEMENT OF FACTS

Plaintiffs allege that, during the Class Period, Defendants failed to disclose and misrepresented the following material, adverse facts which were known to Defendants or recklessly disregarded by them: (1) the Company's debt related to its joint venture involving

Transeastern Properties, Inc. (the "Transeastern Joint Venture") was not "non-recourse" debt; (2) as such, the Company would be liable for full repayment of its Transeastern Joint Venture debt upon the occurrence of certain triggering events, including a declaration of bankruptcy by the joint venture; (3) due to a severe slowdown in the housing market, the Transeastern Joint Venture was experiencing significant losses and would be unable to meet its projections; and (4) as a consequence of the foregoing, the Company would likely lose its investment in the Transeastern Joint Venture, including any loans or receivables owed to it.

On June 5, 2006, before the market opened, Technical announced that the Company's second quarter net sales had been negatively impacted due to decreased demand. On this news, shares of Technical stock fell $1.61 per share, or 8.9%, to close, on June 5, 2006, at $16.48 per share. Technical shares continued to fall the next day, dropping an additional $1.30 per share, or 7.9%, to close, on June 6, 2006, at $15.18 per share.

On September 27, 2006, while the market was open, Technical announced that the Company had met with the lenders to the Transeastern Joint Venture to update them on the financial position of the joint venture and the Florida housing market conditions. Technical also reported that the Florida housing market had severely slowed, which "negatively impacted the joint venture's ability to meet its projections." On this news, shares of Technical's stock sank another $1.47, or 12.1%, to close, on September 27, 2006, at $10.71, on heavy trading volume.

On November 6, 2006, after the market closed, the Company revealed in a Form 8-K filed with the Securities and Exchange Commission that a declaration of bankruptcy by the Transeastern Joint Venture would trigger the Company's obligation to repay its debts related to the joint venture in full. On this news, shares of Technical's stock fell another $3.79, or 35.1%, to close, on November 7, 2006, at $7.00 per share, on unusually heavy trading volume.

2

**ARGUMENT**

A.  **THE RELATED ACTIONS SHOULD BE CONSOLIDATED**

Rule 42(a) provides for consolidation "[w]hen actions involving a common question of law or fact are pending before the court." *Accord Manual for Complex Litigation (3d)*, 20.123, at 13-14 (1995). The PSLRA also contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed". 15 U.S.C. 78u-4(a)(3)(B)(ii).

"In securities actions where the complaints are based on the same 'public statements and reports' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced." *Vincelli v. Nat'l Home Health Care Corp.*, 112 F. Supp. 2d 1309, 1313 (M.D. Fla. 2000) (citation omitted); *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001). Consolidating multi shareholder class action suits streamlines and simplifies pre-trial and discovery motions, class action issues, clerical and administrative management duties, and generally reduces the confusion and delay that result from prosecuting related actions separately before two or more judges. *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 501-02 (S.D. Fla. 2002).

The Actions pending before this Court present similar factual and legal issues, as they allege violations of the same sections of the Exchange Act and name the Company and certain of its officers as Defendants. Because the actions arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions. Accordingly, consolidation under Rule 42(a) and the PSLRA is appropriate.

### 1. The Court Should Resolve The Consolidation Issue As A Prerequisite To The Determination Of Lead Plaintiff

Once the Court decides the consolidation motion, it must decide the lead plaintiff issue "[a]s soon as practicable". Section 21D(a)(3)(B)(ii), 15 U.S.C. 78u 4(a)(3)(B)(ii). As Movant has an interest in moving these Actions forward, it respectfully urges the Court to resolve the consolidation motion as soon as practicable. A prompt determination is reasonable and warranted under Rule 42(a), especially given the common questions of fact and law presented by the related actions now pending in this District.

### B. THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF

#### 1. The Procedure Required By The PSLRA

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." Sections 21D(a)(1) and (a)(3)(B), 15 U.S.C. 78u-4(a)(1) and (a)(3)(B).

First, the plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. Section 21D(a)(3)(B)(ii), 15 U.S.C. 78u 4(a)(3)(A)(i). The PSLRA requires the court to consider within 90 days all motions filed within 60 days after publication of that notice made by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. Section 21D(a)(3)(A)(i)(II) and 21D(a)(3)(B)(i), 15 U.S.C. 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person" that:

> (aa) has either filed the complaint or made a motion in response to a notice;

4

  (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

  (cc) otherwise satisfies the requirements of Rule 23 of Federal Rules of Civil Procedure.

Section 21D(a)(3)(B)(iii)(I), 15 U.S.C. 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Section 21D(a)(3)(B)(iii)(II), 15 U.S.C. 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant satisfies the foregoing criteria and it is not aware of any unique defenses that Defendants could raise against it. Therefore, Movant is entitled to the presumption that it is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the Actions.

### a. **Movant Is Willing To Serve As Class Representative**

On December 14, 2006, counsel caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A)(i), which announced that a securities class action had been filed against, among others, Technical, and which advised putative Class members that they had until February 12, 2007 to file a motion to seek appointment as a lead plaintiff in the action.[1] Movant has reviewed one of the complaints filed in the pending actions and has timely filed its motion pursuant to the Notice. In doing so, Movant has attached its certification attesting to its willingness to serve as representative of the Class and provide testimony at deposition and trial, if necessary. *See* Barker Decl. Ex. A. Accordingly, Movant satisfies the first requirement to

---

[1] The first action against Technical, denominated *Durgin v. Technical Olypmic USA, Inc. et al.*, was filed on December 8, 2006. On December 14, 2006, the Notice was published over the Business Wire. *See* Barker Decl. Ex. C.

serve as lead plaintiff for the Class. Section 21D(a)(3)(B)(iii)(I)(aa), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

### b.   Movant Is An Institutional Investor With The Largest Financial Interest In The Relief Sought By The Class

Under the PSLRA, any member of the purported class may move for appointment as lead plaintiff within 60 days of the publication of notice that the action has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Subsequently, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The legislative history of the PSLRA demonstrates that it was intended to encourage institutional investors, such as Movant, to serve as lead plaintiff. The explanatory report accompanying the PSLRA's enactment specifically states that:

> The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the "most adequate plaintiff."
>
> * * *
>
> The Conference Committee believes that . . . in many cases the beneficiaries of pension funds - small investors - ultimately have the greatest stake in the outcome of the lawsuit. Cumulatively, these small investors represent a single large investor interest. Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.

H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in*, 1995 U.S.C.C.A.N. 730, 733.

Courts in this Circuit, as well as around the country, have noted a Congressional preference to appoint institutional investors. *See*, *e.g.*, *In re Faro Techs. Sec. Litig.*, No. 6:05CV1810ORL22DAB, 2006 WL 1119201, at *3 (M.D. Fla. Apr. 26, 2006) (favoring proposed institutional investor lead plaintiff); *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1331

6

(N.D. Ala. 2000) (noting aim of PSLRA was to encourage institutional investors to control securities class actions); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors"); *Schulman v. Lumenis, Ltd.*, No. 02 CIV. 1989 (DAB), 2003 WL 21415287, at *2 (S.D.N.Y. June 18, 2003) (one purpose behind the PSLRA is "to ensure that 'parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel'") (citation omitted). "Congress believed that this could best be achieved by encouraging institutional investors to serve as lead plaintiffs." *Id.* *See also In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 244 (3d Cir. 2001), *aff'd*, 404 F.3d 173 (2005) (Congress "anticipated and intended that [institutional investors] would serve as lead plaintiffs.")[2]

Indeed, Congress deemed institutional investors "presumptively most adequate to serve as lead plaintiffs in securities class actions." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63 (D. Mass. 1996). Furthermore, Congress believed that "increasing the role of institutional investors in class actions would ultimately benefit shareholders and assist courts by improving the quality of representation in securities class action." *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 221 (D.D.C. 1999); *Ravens v. Iftikar*, 174 F.R.D. 651, 661 (N.D. Cal. 1997) (stating that Congress wanted to encourage large, sophisticated institutional investors to direct securities class actions, thereby supplanting the prior regime of "figurehead plaintiffs who exercise no meaningful supervision of litigation"). Congress reasoned that the empowerment of institutional

---

[2] *See also Bowman v. Legato Sys.*, 195 F.R.D. 655, 657 (N.D. Cal. 2000) (institutional investors are "exactly the type of lead plaintiff envisioned by Congress when it instituted the [PSLRA] lead plaintiff requirements . . ."); *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999) ("Congress expected that the lead plaintiff would normally be an institutional investor").

investors would result in the appointment of lead plaintiffs that can best prosecute the claims and are best able to negotiate with and oversee counsel. *See In re Razorfish Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 309 (S.D.N.Y. 2001) (stating that Congress intended that "institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation . . ."); *Gluck*, 976 F. Supp. at 548 ("The legislative history of the Reform Act is replete with statements of Congress' desire to put control of such litigation in the hands of large, institutional investors").

This presumption is rooted in Congress' belief that "increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts." S. Rep. No. 104-98, at 11 (1995). In reaching this conclusion, Congress reasoned that:

> Institutions' large stakes give them an incentive to monitor, and institutions have or readily could develop the expertise necessary to assess whether plaintiffs' attorneys are acting as faithful champions for the plaintiff class.

Elliot J. Weiss & John S. Beckerman, *Let The Money Do The Monitoring: How Institutional Investors Can Reduce Agency Costs In Securities Class Actions*, 104 Yale L.J. 2053, 2095 (1995) ("Weiss & Beckerman"). *See also* S. Rep. No. 104-98, at 11 n.32 (noting that Weiss & Beckerman provided "the basis for the most adequate plaintiff provision").

Movant is ideally suited for the role as lead plaintiff. Movant lost approximately $388,000 in Technical common stock during the Class Period. As a large institutional investor with significant resources dedicated to overseeing and supervising the prosecution of the litigation, Movant will be able to actively represent the class and "drive the litigation" to ensure that the Class obtains the best recovery possible and implement corporate governance changes to correct the environment which allowed this fraud to take place and to prevent a recurrence ever again. *See Gluck*, 976 F. Supp. at 549 (citation omitted).

### c.  Movant Satisfies The Requirements Of Rule 23(a) Of The Federal Rules Of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA provides that the lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Typicality and adequacy of representation (Rules 23(a)(3) & (a)(4)) are the only provisions relevant to a determination of lead plaintiff under the PSLRA.  *See Foderaro v. Partsbase.com, Inc.*, No. 01-8319-CIV, 2001 WL 34092703, at *2 (S.D. Fla. June 25, 2001); *Vincelli*, 112 F. Supp. 2d at 1314; *Ehlert v. Singer*, 185 F.R.D. 674, 677-78 (M.D. Fla. 1999); *Piven v. Sykes Enters.*, 137 F. Supp. 2d 1295, 1302 (M.D. Fla. 2000); *Fischler v. Amsouth Bancorp.*, No. 96-1567-Civ-T-17A, 1997 WL 118429 at *2 (M.D. Fla. Feb. 6, 1997).

The claims asserted by Movant are typical of those of the Class.  Movant, like the members of the Class, purchased Technical common stock during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and were damaged thereby.  Thus, its claims are typical, if not identical, to those of the other members of the Class because Movant suffered losses similar to those of other class members and its losses result from Defendants' common course of conduct.  *See Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).  Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3).

Likewise, Movant is an adequate representative for the Class because there is no antagonism between its interests and those of the Class.  *Vincelli*, 112 F. Supp. 2d at 1314. Moreover, Movant has retained counsel highly experienced in prosecuting securities class actions, and will submit its choice to the Court for approval pursuant to Section 21D(a)(3)(B)(v), 15 U.S.C. 78u-4(a)(3)(B)(v).

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies Section 21D(a)(3)(B)(iii)(I)(cc), 15 U.S.C. 78u-4(a)(3)(B)(iii)(I)(cc).

### C.  MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to court approval. Section 21D(a)(3)(B)(v), 15 U.S.C. 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class." Section 21D(a)(3)(B)(iii)(II)(aa), 15 U.S.C. 78u-4(a)(3)(B)(iii)(II)(aa). *See also Faro Techs.*, 2006 WL 1119201, at *2 ("Absent any indication that this choice [of counsel] is not in the best interests of the Class, the case law indicates that such a choice should be respected.")

Movant has selected and retained Bernstein Liebhard as the proposed lead counsel and Barker Rodems for the proposed liaison counsel for the Class. Bernstein Liebhard and Barker Rodems have extensive experience prosecuting complex securities class actions, such as this one, and are well qualified to represent the Class. *See* Barker Decl. Exs. D and E for the firm resumes of Bernstein Liebhard and Barker Rodems. As a result, the Court may be assured that by approving Bernstein Liebhard as lead counsel and Barker Rodems as liaison counsel, the Class is receiving the best legal representation available.

### CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Court: (1) consolidate the captioned, and all subsequently-filed, related actions; (2) appoint Movant as lead plaintiff in the captioned, and all subsequently-filed, related actions; and (3) approve Movant's selection of Bernstein Liebhard as lead counsel and Barker Rodems as liaison counsel to represent Plaintiffs and the Class.

Dated: February 12, 2007

                                  **BARKER RODEMS & COOK, P.A**

                                  /s/ Chris A. Barker
                                  _____
                                  Chris A. Barker
                                  Fla. Bar No. 885568
                                  400 North Ashley drive, Suite 2100
                                  Tampa, FL  33602
                                  Telephone: (813) 489-1001
                                  Facsimile:  (813) 489-1008
                                  cbarker@barkerrodemsandcook.com

                                  **Liaison Counsel for Movant and Proposed**
                                  **Liaison Counsel for Plaintiffs and the Class**

                                  **BERNSTEIN LIEBHARD & LIFSHITZ, LLP**
                                  Sandy A. Liebhard
                                  Joseph R. Seidman, Jr.
                                  10 East 40th Street, 22nd Floor
                                  New York, NY 10016
                                  Telephone: (212) 779-1414
                                  Facsimile:  (212) 779-3218

                                  **Counsel for Movant and Proposed Lead**
                                  **Counsel for Plaintiffs and the Class**


## CERTIFICATE OF SERVICE

       I hereby certify that on February 12, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all registered CM/ECF participants.

                                  **BARKER, RODEMS & COOK, P.A.**

                                  **/s/ Chris A. Barker**

                                  **Chris A. Barker, Esquire**