UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 06-61844-CIV-MARRA

GEORGE DURGIN, individually and on behalf
of all others similarly situated,

Plaintiffs,

v.

TOUSA, INC. et al.,

Defendants.
_____

**OPINION AND ORDER**[1]

This cause is before the Court upon Plaintiff Central Laborers' Pension Fund's ("Central Laborers") Renewed Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (DE 136 and 145) and Renewed Motion of Bricklayers & Trowel Trades International Pension Fund ("Bricklayers") for Appointment as Lead Plaintiff and Approval of its Choice of Lead Counsel (DE 148). The Court has carefully considered the motions and is otherwise fully advised in the premises.

On May 22, 2008, the Court permitted Diamondback Capital Management, LLC to withdraw as lead plaintiff and re-opened the lead plaintiff process to those plaintiffs who previously moved to be appointed lead plaintiff. (DE 144.) Two Plaintiffs, Central Laborers and Bricklayers, have moved for consideration. In support, Central Laborers states: (1) it timely moved for appointment as lead plaintiff; (2) it suffered losses of $448,157.13; (3) it purchased the securities during the class period at inflated prices and suffered damages and (4) it will fairly

---

[1] Familiarity with the Court's prior Orders is presumed.

and adequately represent the interests of the class.  Bricklayers's argument is as follows: (1) it suffered a loss of $549,343.44 or, in taking into account trades made before any corrective disclosure, a loss of $493,992; (2) its claims are typical, if not identical, to those of the other members of the class and (3) there is no antagonism between its interests and those of the class.

In response to Bricklayers' application, Central Laborers argues that any presumption favoring Bricklayers as the representative with the largest loss can be rebutted.  Specifically, Central Laborers reads Bricklayers' reference to its lower loss figure of $493,992 as evidence that Bricklayers will not seek to recover the losses of class members who purchased during the class period and sold part of their shares prior to Defendants' disclosures, and therefore will not adequately represent the interests of the class. (DE 158 at 4.)  Alternatively, Central Laborers asks the Court to appoint co-lead plaintiffs. (DE 158 at 5.)

Bricklayers responds to Central Laborers' criticism by pointing out that both numbers it provided are larger than Central Laborers' claimed loss. Furthermore, Bricklayers states that Central Laborers' contention that, by providing those two figures, it has "betrayed" certain class members is "ridiculous."  Bricklayers explains that offering both numbers is appropriate given the methods courts use to analyze lead plaintiff motions.  (DE 159 at 2.)

The Court begins its discussion by noting what is not at issue.  First, both parties previously moved for lead plaintiff status, and thus are eligible for such appointment again.  Cf. In re Initial Pub. Offering Sec. Litig., 214 F.R.D. 117, 120 & n.5 (S.D.N.Y. 2002) (declining to re-open the lead plaintiff process "when all putative class members were given notice of the opportunity to move for appointment of lead plaintiff by means of the statutorily required published notice").  The parties also acknowledge that there is a rebuttable presumption that the

Case 0:06-cv-61844-KAM   Document 160   Entered on FLSD Docket 07/15/2008   Page 3 of 5

person or entity with the largest financial interest is the most adequate plaintiff. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); see Newman v. Eagle Bldg. Tech., 209 F.R.D. 499, 502 (S.D. Fla. 2002) ("the most important factor in determining the lead plaintiff is the amount of financial interest claimed"). Moreover, given its loss, neither party challenges that Bricklayers is presumed to be the most adequate plaintiff. Thus, the only issues before the Court is (1) whether Bricklayers' reference to two loss figures reflects a betrayal of certain class members and (2) whether it would be appropriate to appoint co-lead plaintiffs in this case.

Simply put, there is nothing untoward about Bricklayers' reference to two loss figures in its application for lead plaintiff status. As Bricklayers correctly notes (DE 159 at 2, 4), courts routinely analyze the loss calculation in lead plaintiff applications in terms of trading and removed losses suffered prior to a corrected disclosure. See Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005) (investors who sold stock before corrective disclosure generally cannot recover under section 10(b) of the Securities Exchange Act of 1934 because they suffered no harm in buying and selling artificially inflated stock); Boyd v. NovaStar Fin., Inc., No. 07-0139-CV-W-ODS, 2007 WL 2026130 (W.D. Mo. July 9, 2007) (analysis of financial interest on a lead plaintiff motion must reflect losses suffered prior to a corrective disclosure). Here, the Court rejects Central Laborers' argument that the supplying of both loss numbers by Bricklayers indicates Bricklayers will not adequately represent the class.

Likewise, Central Laborers' application to be appointed co-lead plaintiff, as well as co-lead counsel, can be summarily dismissed. Although Central Laborers points to Plumbers & Pipefitters Local 51 Pension Fund v. First Bancorp, 409 F. Supp. 2d 482 (S.D.N.Y. 2006) in support of this argument, that case is inapposite. There, the court conducted in-court interviews

with the plaintiffs who sustained the largest losses and determined that they had "little investment expertise" and "virtually no experience" with securities litigation. Id. at 483. As a result, the court appointed, as co-lead plaintiff, a pension fund with a smaller loss but expertise in securities litigation. Id. Unlike that case, there is no record evidence that Bricklayers would not be an adequate lead plaintiff. Indeed, as a pension fund with the largest loss, Bricklayers is the intended lead plaintiff under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). See In re Cardinal Health, Inc. Securities Litigation, 226 F.R.D. 298, 309 (S.D. Ohio 2005 ) (PSLRA is intended to encourage institutional investors, especially pension funds, to serve as lead plaintiffs); In re Vicuron Pharms., Inc., 225 F.R.D. 508, 511 (E.D. Pa. 2004) citing H.R. Conf. Rep. No. 104-369, 1995 U.S.C.C.A.N. 730, 733 (same). Finally, allowing co-lead plaintiffs under these circumstances would benefit only the lawyers, a result that is in direct contravention of the PSLRA's purpose. Vincelli v. National Home Health Care Corp., 112 F. Supp. 2d 1309, 1313 (M.D. Fla. 2000) citing In re Party City Securities Litigation, 189 F.R.D. 91,103 (D.N.J. 1999) ("The purpose behind the PSLRA is to 'empower investors so that [the investors], not their lawyers, control private securities litigation by allowing the Court to ensure the transfer of primary control of private securities litigation from lawyers to investors.'").

Lastly, the Court approves Bricklayers' selection of counsel. The evidence before the Court demonstrates that those attorneys have extensive experience prosecuting complex securities class actions and are therefore well qualified to represent the class. (DE 22.)

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Central Laborers Renewed Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (DE 136 and 145) is **DENIED**.

2) The Renewed Motion of Bricklayers for Appointment as Lead Plaintiff and Approval of its Choice of Lead Counsel (DE 148) is **GRANTED**.

3) **Within 15 days of the entry of this Order**, Bricklayers shall either file a response to the motions to dismiss or file a notice of intent to file an to amended complaint.[2]  If Bricklayers chooses to file an amended complaint, it shall be filed within **45 days of the entry of this Order.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 14th day of July 2008.

_____
KENNETH A. MARRA
United States District Judge

---

[2] The Court believes that new lead plaintiff and its counsel should be entitled to proceed on a complaint that they either approve of or have drafted themselves.  Thus, to the extent Bricklayers is not satisfied with the complaint filed by the original lead plaintiff, it has leave to file an amended complaint.